IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DONALD CRAPSER, Personal
Representative of the Estate of RHONDA
BURKE, Deceased,

               Plaintiff,

     v.

NAPHCARE, INC., a Foreign Corporation;
CLACKAMAS COUNTY, a government
body in the State of Oregon; JILL CRUM,
an individual; JESSICA DENKER, an
individual; WILLIAM SMITH, an
individual; JOSEPH PERIUS, an individual;
SOPHIA BARNES, an individual; CALLI
ALBA, an individual; SHERIE CHANEY,
an individual; ANGELA BRADENBURG,
an individual; RICHARD SNEATH, an
individual; ANDREA SCHERZINGER, an
individual; MICHAEL MEAGHER, an
individual; ERIC NALL, an individual;
JASON B. REED, an individual; JOHN
DOES 1-10; and JANE DOES 1-10,

               Defendants.

No. 3:23-cv-00725-HZ

OPINION & ORDER

1 – OPINION & ORDER

Jon A. Zbinden
Zbinden & Curtis
817 NE Broadway
Portland, OR 97212

      Attorney for Plaintiff

David A. Perez
Gregory J. Mina
Perkins Coie, LLP
1120 NW Couch St, 10th Floor
Portland, OR 97209

      Attorneys for Defendant

HERNÁNDEZ, District Judge:

Plaintiff Donald Crapser, the personal representative of the Estate of Rhonda Burke, brings federal and state-law claims against Defendants arising out of the death of Burke while she was incarcerated at the Clackamas County Jail. Defendants NaphCare Inc., William Smith, Joseph Perius, Sophia Barnes, Calli Alba, and Sherie Chaney (the "NaphCare Defendants") move to dismiss the claims asserted against them for failure to state a claim. ECF 24. The other Defendants answered the Complaint. ECF 19, 22. For the following reasons, the Court grants the NaphCare Defendants' motion but gives Plaintiff leave to amend the Complaint.

## BACKGROUND

Defendant NaphCare contracts with Defendant Clackamas County to provide healthcare to jail inmates. Compl. ¶ 62. In the contract, Defendant NaphCare assumed responsibility of assuring inmates received adequate care, including by implementing relevant policies and procedures, providing a detoxification program, and monitoring detoxification cells. *Id.* ¶ 62.

On May 19, 2021, Rhonda Burke was arrested by a Clackamas County deputy sheriff and booked into Clackamas County Jail. *Id.* ¶ 4. Jessica Denker, a registered nurse ("RN") employed by Defendant NaphCare, identified Burke's mental health diagnoses as post-traumatic stress

disorder ("PTSD"), schizoaffective disorder, and bipolar disorder. *Id.* ¶¶ 5, 47. Denker noted that Burke had been hospitalized at Legacy Unity Center in 2019 for psychiatric reasons and Good Samaritan Hospital in 2013 for a suicide attempt. *Id.* ¶ 6. Before Burke was transferred to the segregation unit in the Jail, Denker noted that she "does not recognize relapse triggers, is not committed to continuing care, and continued substance use poses an imminent danger to self or others in the absence of 24-hour monitoring, unable to cope, for even limited periods of time outside of 24-hour care. She needs staff monitoring." *Id.* ¶ 7. On May 20, 2021, Defendant William Smith, a Nurse Practitioner ("NP"), "performed a 'Statcare Intake Assessment', without review of the mental health screen or physical assessment." *Id.* ¶ 8. On May 20, 2021, student practical nurse Heather Sanduo recommended that Burke continue to be followed while in segregation. *Id.* ¶ 9. Also on May 20, Burke's toxicology results were positive for oxycodone, methamphetamine, and marijuana. *Id.* ¶ 10. Burke was released from the Jail on May 20. *Id.* ¶ 11. On May 21, 2021, nurse Jessica Worden posted the diagnoses of alcohol abuse and opioid use disorder, moderate/severe. *Id.* ¶ 12.

On May 25, 2021, at 11:15 pm, Burke was arrested by a Clackamas County deputy sheriff for violating a restraining order. *Id.* ¶ 13. Defendants Michael Meagher and Eric Nall, both jail deputies, evaluated Burke at 11:30 pm and recorded that she was positive for mental health impairment, signs of being under the influence of alcohol and marijuana, abnormal/bizarre behavior, and delusional/paranoid behavior including fear that people wanted to kill her. *Id.* ¶¶ 14, 56-57. Personnel at the Jail observed that Burke was behaving oddly and speaking incoherently, and was uncooperative and unable to understand or follow simple commands. *Id.* ¶ 14. She was not referred for further medical evaluations or placed on a 15-minute watch. *Id.* ¶ 15.

On May 26, 2021, at 1:56 am, Defendant Joseph Perius, a nurse, recorded that he could not screen Burke due to behavioral issues, "per deputies." *Id.* ¶ 16. Burke was moved to an isolation cell. *Id.* ¶ 17. Perius recorded that Burke was yelling and crying and making nonsensical statements. *Id.* Burke needed help to get into the isolation cell because she dropped with dead weight. *Id.* ¶ 18. Defendant Richard Sneath, a jail deputy, noted that Burke was "upset." *Id.* ¶¶ 18, 54. Burke hit the cell door and walls and became more agitated, which was noted as an "unusual booking event." *Id.* ¶ 19. At 8:36 pm on May 26, Burke was noted as experiencing tremors and shakes, with diagnoses of PTSD, schizoaffective disorder, bipolar disorder, and recent use of illegal drugs or pain medications, as recorded by Defendant Perius. *Id.* ¶ 20. Burke was administered with medications on May 26 at 9:41 pm. *Id.* ¶ 21. At 9:47 pm, Defendant Sophia Barnes, a licensed practical nurse ("LPN"), noted that Burke was "experiencing significant withdrawal symptoms and could not be safely managed without medical/nursing monitoring and met criteria for 3.7WM level of care." *Id.* ¶¶ 22, 50. Defendant Barnes ordered neuro checks twice per day through June 1, 2021, because she believed Burke posed an imminent danger to herself without 24-hour monitoring and structured support. *Id.* ¶ 23.

On May 27, 2021, at 1:34 am, Defendant Perius noted that Burke was alert, oriented, and cooperative, with appropriate affect. *Id.* ¶ 24. He did not perform a suicide risk assessment. *Id.* About an hour later, Burke's toxicology screen was positive for oxycodone, methamphetamine, marijuana, buprenorphine, and amphetamine, as reviewed by Defendant Barnes. *Id.* ¶ 25. Twenty minutes later, Burke began a 120-hour isolation. *Id.* ¶ 26. Burke did not receive her Librium medication at 3:16 am on May 27. *Id.* ¶ 27. At 9:53 am on May 27, Burke submitted a medical request form stating, "need mental health advisor" and "need help." *Id.* ¶ 28. At 4:04 pm on May

27, Defendant Sherie Chaney, a psychiatric nurse, assessed Burke as hostile and irritable but not needing mental health services. *Id.* ¶ 29.

On the morning of May 28, 2021, Defendant Andrea Scherzinger, a jail deputy, responded to an alarm, and Burke told her that she was in pain and was not getting help from medical. *Id.* ¶¶ 30, 55. At 6:52 am, Scherzinger observed that Burke had not eaten breakfast, and Burke reiterated that she was in a lot of pain. *Id.* ¶ 31. At 8:39 am, Burke told Scherzinger that she was in too much pain to get up for breakfast. *Id.* ¶ 32. Scherzinger told Burke she would inform medical, and Burke called her liar and said she needed to go to the hospital. *Id.* At 8:50 am, Defendant Jason Reed, a jail deputy, and Denker observed Burke as detoxing from drugs and alcohol, crying, and stating that she was in too much pain to stand. *Id.* ¶¶ 33, 58. Burke declined Tylenol and ibuprofen because they would hurt her injured kidney. *Id.* ¶ 33. At 9:05 am, Defendant Scherzinger noted that Burke was yelling and banging on her cell door. *Id.* ¶ 34. She tried to talk to Burke to quiet her, but Burke kept yelling and banging on the door. *Id.* ¶ 35. Scherzinger told Denker about Burke, and Denker stated that Burke was on her detox list and she would check on Burke. *Id.* ¶ 36.

At 9:47 am on May 28, 2021, Burke was found unresponsive in her isolation cell, hanging from the top bunk with a sheet around her neck. *Id.* ¶ 37. Burke was transported to Kaiser Permanente and declared deceased at 1:35 pm. *Id.* ¶ 38. The cause of death was asphyxia due to ligature hanging. *Id.* Another inmate at the Jail told Defendant Reed that inmates had been yelling that Burke should kill herself because she was making so much noise. *Id.* ¶ 39.

Plaintiff sued Defendants on May 16, 2023. The Complaint alleges five claims. Claim One alleges deliberate indifference to Burke's medical needs. *Id.* ¶¶ 98-103. Claim Two alleges *Monell* liability against Defendants NaphCare and Clackamas County. *Id.* ¶¶ 104-11. Claim

Three alleges supervisory liability against the County. *Id.* ¶¶ 112-22. Claim Four alleges

negligence. *Id.* ¶¶ 123-26. Claim Five alleges gross negligence against Defendant NaphCare. *Id.*

¶¶ 127-30. The NaphCare Defendants move to dismiss all claims against them. Def. Mot. 1. The

Court already dismissed NaphCare Defendants Jessica Denker and Jill Crum from this case

based on the parties' stipulation. ECF 23, 26.

## STANDARDS

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency

of the claims. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). When evaluating the

sufficiency of a complaint's factual allegations, the court must accept all material facts alleged in

the complaint as true and construe them in the light most favorable to the non-moving party.

*Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012). A motion to dismiss under

Rule 12(b)(6) will be granted if a plaintiff alleges the "grounds" of his or her "entitlement to

relief" with nothing "more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Factual

allegations must be enough to raise a right to relief above the speculative level on the assumption

that all the allegations in the complaint are true (even if doubtful in fact)[.]" *Id.* (citations and

footnote omitted).

To survive a motion to dismiss, a complaint "must contain sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009) (internal quotation marks omitted). A plaintiff must "plead[] factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Id.* In other words, a complaint must state a plausible claim for relief and contain "well-

pleaded facts" that "permit the court to infer more than the mere possibility of misconduct[.]" *Id.* at 679.

**DISCUSSION**

The NaphCare Defendants argue that all claims against them must be dismissed because the Complaint does not adequately explain what acts or omissions of each Defendant give rise to liability for each of Plaintiff's claims. Def. Mot. 12-16. They argue that Plaintiff's first, second, and fifth claims should be dismissed with prejudice for additional failures of pleading. *Id.* at 16-28. The Court concludes that all claims against the NaphCare Defendants must be dismissed, but grants leave to amend most of the claims.

## I.    Incorporation of Documents by Reference

Defendants ask the Court to incorporate by reference NaphCare's Policy and Procedure Manual ("the Manual") and the medical records documenting Rhonda Burke's treatment at Clackamas County Jail. Def. Mot. 4; Mina Decl. ¶¶ 2-3, Exs 1-2, ECF 25. "Generally, district courts may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018). However, a court "may consider evidence on which the complaint 'necessarily relies' if (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). In contrast, the "mere mention of the existence of a document is insufficient to incorporate the contents of a document." *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010). And a document that "merely creates a defense to the well-pled allegations in the complaint"

generally should not be incorporated by reference because it "did not necessarily form the basis of the complaint." *Khoja*, 899 F.3d at 1002.

Defendants argue that both documents should be incorporated by reference because the Complaint refers to them repeatedly in support of Plaintiff's claims. Def. Mot. 4 (citing Compl. ¶¶ 62-68, 70, 74-75, 78-83, 85, 87, 104-09). Plaintiff does not contest the incorporation of the documents or the authenticity of the copies Defendants submitted. Plaintiff submits copies of Burke's medical records and refers to a copy of the Manual in his Response. Zbinden Decl. ¶¶ 2-3, ECF 28. Plaintiff does, however, appear to challenge the accuracy of some of the medical records. Pl. Resp. 3, ECF 27. The Court concludes that incorporation of the medical records is appropriate, as the Complaint repeatedly quotes from them, but because Plaintiff disputes the accuracy of some records, the Court will not assume the truth of the content of the records to the extent that the Complaint appears to challenge the accuracy of the records. *See Khoja*, 899 F.3d at 1003 ("[I]t is improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint."). The Court will not incorporate the Manual by reference. Although Plaintiff alleges unconstitutional policies, customs, or practices, Compl. ¶ 105, the Complaint does not cite the Manual, and the Manual is not central to Plaintiff's *Monell* claim, which appears to allege only customs or practices. *See infra*.

## II.    Failure to State a Claim

### A.    Compliance with Rule 8(a)(2)

Defendant argues that Plaintiff's Complaint does not comply with Rule 8(a)(2) because it does not clarify which act(s) or omission(s) by which Defendant(s) gave rise to Plaintiff's claims. Def. Mot. 12-16. "A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P.

8(a)(2). So-called shotgun pleadings violate this requirement. "Shotgun pleadings are pleadings that overwhelm defendants with an unclear mass of allegations and make it difficult or impossible for defendants to make informed responses to the plaintiff's allegations." *Sollberger v. Wachovia Sec., LLC*, No. SACV 09-0766AGANX, 2010 WL 2674456, at *4 (C.D. Cal. June 30, 2010). Courts in the Ninth Circuit have dismissed complaints or granted motions for a more definite statement where the complaint is a shotgun pleading. *E.g.*, *Sollberger*, 2010 WL 2674456, at *5 (dismissing complaint); *Conta v. City of Huntington Beach*, No. 821CV01897JLSKES, 2022 WL 3574439, at *4 (C.D. Cal. June 22, 2022) (granting motion for more definite statement). *See also Destfino v. Reiswig*, 630 F.3d 952, 958-59 (9th Cir. 2011) (holding that district court did not err in dismissing complaint for failing to specify which defendants were accused of what conduct).

The Eleventh Circuit has identified four types of shogun pleadings. First is a complaint in which each count adopts all of the allegations of the preceding counts. *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321 (11th Cir. 2015). Second is a complaint alleging "conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Id.* at 1322. Third is a complaint that does not separate each cause of action or claim for relief into different counts. *Id.* at 1322-23. Fourth is a complaint that fails to specify which defendants are responsible for which acts or omissions. *Id.* at 1323.

The NaphCare Defendants argue that the Complaint falls into all four categories of shotgun pleading. Def. Mot. 13-16. The first category does not, on its own, concern the Court. It is common for a plaintiff's complaint to reallege all preceding allegations by reference. If the other allegations in each claim clarify which factual allegations are relevant to that claim and against which defendants the claim is alleged, the reincorporation by reference is not unduly

confusing. Plaintiff's Complaint provides no such clarity. The NaphCare Defendants correctly state that "Plaintiff lumps all defendants together without specifying who supposedly did what allegedly wrongful act." *Id.* at 14. In each of his claims against the NaphCare Defendants, Plaintiff lists the Defendants and then lists alleged acts or omissions without linking particular Defendants to each act or omission. Compl. ¶¶ 99-100 (Claim 1); 105 (Claim 2); 114-19 (Claim 3); 124 (Claim 4); 128 (Claim 5). It is not apparent from the facts alleged which Defendant is responsible for many of these acts or omissions. The NaphCare Defendants have not been provided adequate notice of what conduct gives rise to liability for each of them for each claim. The Court therefore dismisses the Complaint with leave to amend.

The Court observes that it is unclear whether Plaintiff's third claim for relief is intended to be brought against the NaphCare Defendants. The claim is titled "Supervisory Liability – Wrongful Death – Clackamas County," but the claim appears to allege that the NaphCare Defendants are liable for failures of training and supervision. *See* Compl. ¶¶ 114-21. In amending the Complaint, Plaintiff should clarify whether this claim is intended to be brought against any or all of the NaphCare Defendants and should allege facts supporting liability for any Defendant against whom the claim is directed.

Finally, the NaphCare Defendants correctly state that the Complaint must be dismissed as to two of them for insufficient factual allegations. Def. Mot. 14 n.7. First, the Complaint makes no factual allegations as to Defendant Calli Alba other than that she is an RN employed by Defendant NaphCare who worked in the Jail. Compl. ¶ 51. The Court therefore dismisses Defendant Alba from the Complaint and grants Plaintiff leave to amend the Complaint to provide specific allegations about Defendant Alba's acts or omissions. Second, the Complaint makes only minimal factual allegations as to Defendant William Smith. It alleges that he is an NP

employed by Defendant NaphCare who worked in the Jail. *Id.* ¶ 48. And it alleges that on May 20, 2021, after Burke's first arrest, he performed a "Statcare Intake Assessment" of Burke without reviewing the mental health screen or physical assessment. *Id.* ¶ 8. The Complaint does not adequately allege how this act or omission was a cause of Burke's suicide after her second arrest. The Court dismisses Defendant Smith from the Complaint with leave to amend. The Court next assesses the individual claims with respect to the remaining NaphCare Defendants.

B.      Sufficiency of Claims

i.      Claim 1

Plaintiff's first claim for relief alleges deliberate indifference to Rhonda Burke's medical needs in violation of the Fourteenth Amendment under 42 U.S.C. § 1983. Compl. ¶¶ 98-103. To state a claim under § 1983, Plaintiff must allege that the NaphCare Defendants (1) deprived Burke of a constitutional right and (2) acted under color of state law. *Wright v. Serv. Emps. Int'l Union Loc. 503*, 48 F.4th 1112, 1121 (9th Cir. 2022), *cert. denied*, 143 S. Ct. 749 (2023). The NaphCare Defendants challenge only the first element. "[C]laims for violations of the right to adequate medical care brought by pretrial detainees against individual defendants under the Fourteenth Amendment must be evaluated under an objective deliberate indifference standard." *Gordon v. County of Orange*, 888 F.3d 1118, 1124-25 (9th Cir. 2018) (internal quotations omitted). The plaintiff must establish four elements:

> (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

*Id.* at 1125. The Ninth Circuit held that the deliberate indifference standard was met when the

defendant officers placed the plaintiff, an intoxicated man detained for a misdemeanor, in a

holding cell with a felony arrestee who "was enraged and combative." *Castro v. Cnty. of Los*

*Angeles*, 833 F.3d 1060, 1073 (9th Cir. 2016). One of the defendants delegated safety checks to a

volunteer and then sat nearby for a full minute without responding to the plaintiff, who was

banging on the wall for help as the felony arrestee beat him. *Id.*

      The NaphCare Defendants correctly state that an entity may not be held vicariously liable

for the actions of its employees under § 1983. Def. Mot. 13. For both municipal and private

entities, liability cannot be established on the sole basis that the entity employs the tortfeasor; the

plaintiff must show that the alleged acts were due to a policy, practice, or custom of the entity.

*Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691 (1978) (so holding for

municipalities); *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1139 (9th Cir. 2012) (applying

*Monell* to private entities). The Court dismisses Claim 1 as to Defendant NaphCare with

prejudice. The NaphCare Defendants also point out that some of the alleged acts or omissions in

Claim 1 appear to pertain to Defendant NaphCare and not to individual NaphCare Defendants.

Def. Mot. 13-14. Claim 1 alleges failures in staffing levels, staff supervision, and staff

qualifications. Compl. ¶ 100(f)-(h), (j). Plaintiff has not alleged facts indicating that any of the

individual NaphCare Defendants had authority over such matters. In amending Claim 1, Plaintiff

should either allege such facts or, if there is no good-faith basis to do so, remove any allegations

that pertain to Defendant NaphCare as an entity from Claim 1.

      In light of the above, the Court now considers Claim 1 with respect to three NaphCare

Defendants: Joseph Perius, Sophia Barnes, and Sherie Chaney. The Complaint alleges that on

May 26, 2021, at 1:56 am, Defendant Perius recorded that he could not screen Burke due to

behavioral issues, "per deputies." Compl. ¶ 16. Perius recorded Burke as yelling, crying, and incoherent as she was taken to an isolation cell. *Id.* ¶ 17. At 8:36 pm on May 26, Defendant Perius recorded that Burke was experiencing tremors and shakes, with diagnoses of PTSD, schizoaffective disorder, bipolar disorder, and recent use of illegal drugs or pain medications. *Id.* ¶ 20. At 9:47 pm, Defendant Barnes noted that Burke was "experiencing significant withdrawal symptoms and could not be safely managed without medical/nursing monitoring and met criteria for 3.7WM level of care." *Id.* ¶ 22. Defendant Barnes ordered neuro checks twice per day through June 1, 2021, because she believed Burke posed an imminent danger to herself without 24-hour monitoring and structured support. *Id.* ¶ 23.

On May 27, 2021, at 1:34 am, Defendant Perius noted that Burke was alert, oriented, and cooperative, with appropriate affect. *Id.* ¶ 24. Perius did not perform a suicide risk assessment. *Id.* About an hour later, Burke's toxicology screen was positive for oxycodone, methamphetamine, marijuana, buprenorphine, and amphetamine, as reviewed by Defendant Barnes. *Id.* ¶ 25. Twenty minutes later, Burke began a 120-hour isolation. *Id.* ¶ 26. Burke did not receive her Librium medication at 3:16 am on May 27. *Id.* ¶ 27. At 9:53 am on May 27, Burke submitted a medical request form stating, "need mental health advisor" and "need help." *Id.* ¶ 28. At 4:04 pm on May 27, Defendant Sherie Chaney, a psychiatric nurse, assessed Burke as hostile and irritable but not needing mental health services. *Id.* ¶ 29.

No subsequent allegations concern Defendants Perius, Barnes, and Chaney. The allegations addressing May 28, the day Burke died, mostly cover the actions of County Defendants. *See* Compl. ¶¶ 30-37. Plaintiff also makes some allegations about NaphCare Defendant Jessica Denker, who was dismissed from the Complaint by stipulation. The NaphCare Defendants state that Plaintiff has confused two NaphCare nurses, as Jessica Worden was the

nurse on duty on May 28. Def. Mot. 10 n.6. Neither Jessica Denker nor Jessica Worden is a defendant in this case.

The NaphCare Defendants argue that Plaintiff's deliberate indifference claim fails because no reasonable nurse would have known that Burke was at a high risk of suicide. Def. Mot. 17. They point out that both times Burke was screened for suicide risk, she answered "no" to every question. *Id.* After Burke's first arrest, Denker screened her for suicide risk, and Burke was recorded as answering "no" to the questions. Mina Decl. Ex. 2 at 16-17. *See also* Compl. ¶¶ 5-6 (discussing Denker's mental health screening of Burke). The allegations in Claim 1 do not challenge the adequacy of the screening. Defendant Perius screened Burke for suicide risk again after her second arrest, and Burke was again recorded as answering "no" to the questions. Mina Decl. Ex. 2 at 89-90. *See also* Compl. ¶ 20 (discussing Defendant Perius's screening of Burke). Again, Claim 1 does not challenge the adequacy of the screening. In his response to Defendants' motion, Plaintiff describes alleged care failures and inaccuracies in Burke's medical records from the Jail with apparent citations whose referents the Court cannot determine. Pl. Resp. 5-7. It appears Plaintiff may intend to challenge the suicide risk screenings. *See id.* To the extent Plaintiff alleges facts not in the Complaint, the Court considers them only as a basis to grant leave to amend the Complaint.

Plaintiff argues that the NaphCare Defendants were on notice that Burke posed an imminent danger to herself. *Id.* at 5. The Complaint alleges that after Burke's first arrest, she was recorded as undergoing psychiatric hospitalization in 2019 and hospitalization in 2013 for a suicide attempt. Compl. ¶ 6. Plaintiff suggests that this put the NaphCare Defendants on notice of the risk. Pl. Resp. 5. Other district courts have found allegations sufficient to state a claim for deliberate indifference when the defendants knew that the decedent had recently been suicidal

and failed to place them in a safe environment. *E.g.*, *Deloney v. Cnty. of Fresno*, No. 117CV01336LJOEPG, 2019 WL 1875588, at *7 (E.D. Cal. Apr. 26, 2019). The NaphCare Defendants argue that "no reasonable nurse would have known that Ms. Burke was at imminent risk for suicide based on hospitalizations that occurred years earlier." Def. Mot. 18. They point out that the suicide attempt was eight years before Burke was arrested. *Id.* The Court agrees that these hospitalizations did not put the NaphCare Defendants on notice of an imminent suicide risk. And the Complaint does not allege that Burke said or did anything that would have put the NaphCare Defendants on notice that she was a suicide risk.

Rather, the Complaint alleges that Burke was under the influence of alcohol and multiple controlled substances, that she needed monitoring as she went through withdrawal, and that she suffered considerable pain and discomfort during that process. The Complaint alleges that Burke was recorded as posing an imminent danger to herself because of her substance use, not because she was at a risk of suicide. Compl. ¶¶ 7, 23, 65, 81; Mina Decl. Ex. 2 at 53, 105 (medical records on which allegations are based). The Complaint does not allege facts plausibly suggesting that Defendants should have known that Burke was at a risk of suicide because she was under the influence of controlled substances or for another reason. It does allege that Burke sent a request form stating, "need mental health advisor" and "need help." Compl. ¶ 28. While this form may have been enough to alert Defendants that Burke was not mentally well and needed mental health support, it cannot plausibly be construed to have put Defendants on notice that Burke was at a risk of suicide.

Plaintiff has failed to allege that Defendants Barnes, Chaney, or Perius acted with deliberate indifference to Burke's medical needs. Besides failing to show that they should have been aware that Burke posed a suicide risk, Plaintiff alleges many acts or omissions that are too

vague to state a claim. For example, Plaintiff alleges that Defendants "[f]ailed to provide Rhonda Burke with prompt and adequate medical attention for her serious medical needs[.]" Compl. ¶ 99(a). Some alleged omissions are specific; for example, Plaintiff alleges that Defendants failed to give Burke the Librium she was prescribed. *Id.* ¶ 99(c). But it is unclear to which NaphCare Defendant the omissions are ascribed. Finally, the Court notes that the factual allegations regarding Defendant Barnes do not plausibly suggest that she was deliberately indifferent to Burke's medical needs. The Complaint alleges that she recognized that Burke posed an imminent danger to herself, stated that Burke needed 24-hour monitoring and structured support, and ordered neuro checks twice per day through June 1, 2021. *Id.* ¶ 23. In amending Claim 1, Plaintiff should specify the acts and omissions attributed to each individual Defendant and how they caused the harm, and plead facts showing that Defendants should have known that Burke faced a substantial risk of suicide.

ii.    Claim 2

Plaintiff's second claim for relief alleges that Defendant NaphCare is liable for the actions of its employees under *Monell*. Compl. ¶¶ 104-11. To state a § 1983 claim against an entity, Plaintiff must plead that (1) the entity acted under color of state law and (2) a constitutional deprivation was caused by an official policy, custom, or practice of the entity. *Tsao*, 698 F.3d at 1139 (applying *Monell*, 436 U.S. at 691). Defendant NaphCare challenges only the second element. Def. Mot. 20-28.

"A policy is a deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Tsao*, 698 F.3d at 1143 (internal quotations omitted).

A custom or practice generally "has not been formally approved by an appropriate decisionmaker" but "is so widespread as to have the force of law." *Hunter v. Cnty. of Sacramento,* 652 F.3d 1225, 1233 (9th Cir. 2011). A policy, custom, or practice may be one that results in the entity itself violating the plaintiff's rights, or one that, through omission on the part of the entity, results in one of its employees violating the plaintiff's rights. *Tsao,* 698 F.3d at 1143. "A policy of inaction or omission may be based on failure to implement procedural safeguards to prevent constitutional violations." *Id.*

> To establish that there is a policy based on a failure to preserve constitutional rights, a plaintiff must show, in addition to a constitutional violation, that this policy amounts to deliberate indifference to the plaintiff's constitutional right[,] and that the policy caused the violation, in the sense that the [entity] could have prevented the violation with an appropriate policy.

*Id.* (internal citation and quotations omitted). To show deliberate indifference, the plaintiff must show that the entity "was on actual or constructive notice that its omission would likely result in a constitutional violation." *Id.* at 1145 (internal quotations omitted).

Finally, an entity "may be held liable for a constitutional violation if a final policymaker ratifies a subordinate's actions." *Lytle v. Carl,* 382 F.3d 978, 987 (9th Cir. 2004). "To show ratification, a plaintiff must show that the authorized policymakers approve a subordinate's decision and the basis for it." *Id.* (internal quotations omitted). "The policymaker must have knowledge of the constitutional violation and actually approve of it." *Id.*

Plaintiff's Complaint alleges three theories under *Monell*: (1) unconstitutional policies, customs, or practices; (2) failure to adequately train and supervise, and (3) ratification. Compl. ¶¶ 105-08. Defendant NaphCare argues that all three are deficient. Def. Mot. 21. The Court agrees and therefore dismisses Claim 2 with leave to amend.

Defendant NaphCare challenge the allegations on unconstitutional policies, customs, and practices as too vague and unsupported by facts. Def. Mot. 22-24. The Court first notes that Plaintiff appears to plead only customs or practices, as the Complaint does not point to official policies in the Manual—or another source of official policy—that it alleges are unconstitutional. To the extent that Plaintiff's Response makes such allegations, they show a good-faith basis to amend the Complaint. The Complaint lists several customs or practices. *See* Compl. ¶ 105(a)-(n). There is no consensus among district courts as to how specific alleged customs or practices must be to state a claim under *Monell*. *Ingram v. Mouser*, No. 1:19-CV-00308-DCN, 2021 WL 329559, at *5 (D. Idaho Feb. 1, 2021). Some district courts allow less detailed allegations where the plaintiffs show multiple incidents of the same conduct. *See id.* at *4 (citing *Estate of Osuna v. Cty. of Stanislaus*, 392 F. Supp. 3d 1162 (E.D. Cal. 2019)). The customs or practices alleged at paragraph 105(a), (d), (j), (l), and (n) of the Complaint are too broad or too vague. The Court concludes that the other customs or practices are specific enough at this stage of the case. *See, e.g.*, *Est. of Kong by & through Kong v. City of San Diego*, No. 22-CV-1858-BAS-DDL, 2023 WL 4939370, at *6 (S.D. Cal. Aug. 2, 2023) (concluding that defendant police department's alleged custom or practice of "using unreasonable and excessive force, including deadly force" was sufficient under *Monell*). But Plaintiff's custom-or-practice theory still fails because it is unsupported by adequate factual allegations.

The Complaint does not allege facts plausibly suggesting that Burke's suicide was caused by a custom or practice. *See* Def. Mot. 23-24. The Ninth Circuit has held that a single incident generally cannot establish a custom or practice. *Gordon v. Cnty. of Orange*, 6 F.4th 961, 974 (9th Cir. 2021). The Complaint alleges facts particular to the treatment of Burke, such as a single instance of failing to provide her medication. Compl. ¶ 27. It does not allege that other inmates

have been subjected to the same unconstitutional acts or omissions as Burke. Plaintiff argues that

"Defendants' inaction continued long enough to constitute a longstanding practice[.]" Pl. Resp.

4. Plaintiff is incorrect. Burke's second period of incarceration lasted from 11:15 pm on May 25,

2021, to the morning of May 28, when she was found unresponsive in her cell. Compl. ¶¶ 13, 37.

There may be a case in which an inmate's treatment occurred over a long enough period of time

that the inmate could plead a custom or practice without reference to others undergoing the same

treatment. This is not that case. Plaintiff has failed to adequately plead the existence of a custom

or practice.

The Complaint also fails to link many of the alleged customs or practices to Burke's

death. It asserts in formulaic language that the alleged policies or customs caused Burke's death.

*Id.* ¶ 105. These allegations are insufficient. The Ninth Circuit has held that *Monell* claims must

do more than recite the elements of the cause of action. *AE ex rel. Hernandez v. Cnty. of Tulare,*

*666 F.3d 631, 637 (9th Cir. 2012)* (holding that complaint failed to state a claim under *Monell*

where it alleged that the defendants "'maintained or permitted an official policy, custom or

practice of knowingly permitting the occurrence of the type of wrongs' that it elsewhere

alleged"). Several of the practices alleged are unsupported by any factual allegations suggesting

that they caused Burke's death. Defendant NaphCare points to alleged practices of providing

insufficient staff coverage, lack of access to a physician, and not following the monitoring

guidelines on detoxification. Def. Mot. 25. Defendant is correct that the Complaint does not

allege staffing shortages or lack of access to a physician during the relevant period, or that more

staff or the involvement of a physician would have prevented the suicide. *See id.* Defendant is

also correct that the Complaint identifies no failures to follow the monitoring guidelines. *Id.*

Plaintiff's Response indicates that he may be able to allege more facts. *See* Pl. Resp. 5. The

Court grants leave to amend this theory because the defects outlined above could be cured by amendment.

Next, Defendant NaphCare argues that Plaintiff failed to plead deliberate indifference because he did not allege that NaphCare was on actual or constructive notice of the alleged unconstitutional practices. Def. Mot. 24. Plaintiff provides only the naked assertion that Defendant NaphCare was deliberately indifferent. Compl. ¶¶ 106-07. Plaintiff pleads no facts supporting that assertion, which is a legal conclusion not entitled to be taken as true for the purposes of this Motion. This defect could also be remedied by amendment, so the Court grants leave to amend this theory.

Defendant also challenges Plaintiff's failure-to-train theory, arguing that the Complaint inadequately alleges that failure to train constituted a policy. Def. Mot. 25-27. "In limited circumstances, [an entity's] decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick v. Thompson*, 563 U.S. 51, 61 (2011).

> To allege a failure to train, a plaintiff must include sufficient facts to support a reasonable inference (1) of a constitutional violation; (2) of a[n entity's] training policy that amounts to a deliberate indifference to constitutional rights; and (3) that the constitutional injury would not have resulted if the [entity] properly trained their employees.

*Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1153-54 (9th Cir. 2021). To show deliberate indifference, the plaintiff must allege that the entity's policymakers had "actual or constructive notice that a particular omission in their training program causes [entity] employees to violate citizens' constitutional rights[.]" *Connick*, 563 U.S. at 61. In general, a single incident does not support a failure-to-train theory. *Benavidez*, 993 F.3d at 1154.

The Complaint does not adequately allege any of the three elements of this theory. It alleges a failure of training and supervision in vague and conclusory terms. Compl. ¶¶ 105(e), (f); 107. It fails to allege facts suggesting that Defendant NaphCare was on notice of particular failures in its training program. It relies on a single incident. And it fails to allege that proper training would have prevented the harm to Burke. Plaintiff's third claim for relief provides more allegations about training, *see id.* ¶¶ 115, 118, but those allegations are not incorporated into the second claim for relief. The Court grants leave to amend this theory to the extent that Plaintiff can allege facts meeting the standard outlined here.

Finally, Defendant NaphCare argues that Plaintiff fails to allege that official policymakers ratified the unconstitutional acts or omissions. Def. Mot. 28. The Complaint alleges:

> The details of the death of Rhonda Burke have been revealed to authorized policymakers within Clackamas County, the Clackamas County Sheriffs [sic] Department, and Naphcare, and such policymakers have direct knowledge of the fact that the death of Rhonda Burke was not justified, but rather represented an unconstitutional display of unreasonable, deliberate indifference of serious medical needs, of cruel and unusual punishment. Notwithstanding this knowledge, the authorized policymakers within Clackamas County, its Sheriffs [sic] Department and Naphcare have approved of defendant Naphcare and its employees and agents [sic] conduct in decisions and have made a deliberate choice to endorse such conduct and decisions, and the basis for them, that resulted in the death of Rhonda Burke. By doing so, the authorized policymakers within Clackamas County and its Sheriffs [sic] Department, have shown affirmative agreement with the defendants' actions and have ratified the unconstitutional acts of defendant Naphcare.

Compl. ¶ 108. As Defendant argues, Plaintiff's allegations are conclusory. Def. Mot. 28. Plaintiff does not plead underlying facts tending to show that the policymakers knew of or ratified the acts or omissions. This defect could be cured by amendment. In sum, the Court dismisses Plaintiff's second claim for relief and grants leave to amend.

iii.    Claim 4

Plaintiff's fourth claim for relief alleges that the NaphCare Defendants were negligent in

treating Rhonda Burke. Compl. ¶¶ 123-26.

Under Oregon law,

"unless the parties invoke a status, a relationship, or a particular standard of conduct that creates, defines, or limits the defendant's duty, the issue of liability for harm actually resulting from defendant's conduct properly depends on whether that conduct unreasonably created a foreseeable risk to a protected interest of the kind of harm that befell the plaintiff."

*Rhodes v. U.S. W. Coast Taekwondo Ass'n, Inc.*, 273 Or. App. 670, 678, 359 P.3d 1196 (2015)

(quoting *Fazzolari By & Through Fazzolari v. Portland Sch. Dist. No. 1J*, 303 Or. 1, 17, 734

P.2d 1326 (1987)). If there is no special relationship, a complaint for negligence

must allege facts from which a factfinder could determine (1) that defendant's conduct caused a foreseeable risk of harm, (2) that the risk is to an interest of a kind that the law protects against negligent invasion, (3) that defendant's conduct was unreasonable in light of the risk, (4) that the conduct was a cause of plaintiff's harm, and (5) that plaintiff was within the class of persons and plaintiff's injury was within the general type of potential incidents and injuries that made defendant's conduct negligent.

*Stewart v. Kids Inc. of Dallas, OR*, 245 Or. App. 267, 274-75, 261 P.3d 1272 (2011) (internal

quotations omitted). With or without a special relationship, foreseeability is important to the

analysis. *Rhodes*, 273 Or. App. at 678.

The NaphCare Defendants make no individualized argument about this claim, relying on

their general argument that the Complaint is a shotgun pleading. The Court has already

concluded that it is. The Court dismisses Claim 4 as to the NaphCare Defendants with leave to

amend consistent with the Court's analysis and the legal standards outlined above.

//

//

iv.    Claim 5

Plaintiff's fifth claim for relief alleges that Defendant NaphCare was grossly negligent "by and through its employees acting within the scope of their employment" in treating Rhonda Burke. Compl. ¶¶ 127-30. Gross negligence "is negligence of a substantially greater degree than that of ordinary negligence." *Howard v. Chimps, Inc.*, 251 Or. App. 636, 647, 284 P.3d 1181 (2012) (internal quotations omitted). "To establish gross negligence, plaintiff [must] show that defendant acted with reckless disregard of safety or indifference to the probable consequences of its acts." *Id.* The Ninth Circuit has indicated that Oregon's gross negligence standard is not as high as the deliberate indifference standard required for a § 1983 claim. *L.W. v. Grubbs*, 92 F.3d 894, 899 (9th Cir. 1996); *Brown v. Holder*, 763 F.3d 1141, 1150 n.5 (9th Cir. 2014). The Supreme Court has also stated that gross negligence is a lesser standard than deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 836 n.4 (1994) (observing that gross negligence is akin to recklessness).

Although the gross negligence standard is lower than the deliberate indifference standard, much of the Court's analysis for Claim 1 applies here. Plaintiff has not plausibly alleged that any NaphCare employee acted in reckless disregard of Burke's safety in a manner that caused her suicide. Therefore, the Complaint fails to plead that Defendant NaphCare was grossly negligent on a theory of vicarious liability. This defect could be cured by pleading additional facts and specifying which acts or omissions by which employee(s) of Defendant NaphCare caused Burke's death. The Court therefore grants leave to amend Claim 5.

//

//

//

**CONCLUSION**

The NaphCare Defendants' Motion to Dismiss [24] is GRANTED. Plaintiff has leave to file an amended complaint consistent with this Opinion and Order within 14 days.

IT IS SO ORDERED.


DATED:  October 24, 2023      .




MARCO A. HERNÁNDEZ
United States District Judge