IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| DONALD CRAPSER, Personal Representative of the Estate of RHONDA BURKE, Deceased,<br><br>            Plaintiff,<br><br>v.<br><br>NAPHCARE INC., a Foreign Corporation; and CLACKAMAS COUNTY, a government body in the State of Oregon, WILLIAM SMITH, an individual, JOSEPH PERIUS, an individual, SOPHIA BARNES, an individual, SHERIE CHANEY, an individual, ANGELA BRADENBURG, an individual, RICHARD SNEATH, an individual, ANDREA SCHERZINGER, an individual, MICHAEL MEAGHER, an individual, ERIC NALL, an individual, JASON B. REED, an individual, JOHN DOES 1-10, and JANE DOES 1-10,<br><br>            Defendants. | No. 3:23-cv-00725-HZ<br><br>OPINION & ORDER |

Donald Crapser
3104 S.E. 64th Avenue
Portland, OR 97206-1906

      Plaintiff, *Pro Se*

1 – OPINION & ORDER

David A. Perez
Adrianna Simonelli
Perkins Coie LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209–4128

      Attorneys for Defendants Naphcare, Inc.; William Smith; Joseph Perius; Sophia Barnes; and Sherie Chaney ("Naphcare Defendants")

HERNÁNDEZ, District Judge:

This matter comes before the Court on NaphCare Defendants' Motion to Dismiss First Amended Complaint, ECF 42. For the reasons that follow, the Court grants Defendants' Motion.

## BACKGROUND

Defendant NaphCare, Inc., contracts with Defendant Clackamas County to provide healthcare to jail inmates. First Am. Compl. ("FAC") ¶ 21. In the contract, NaphCare assumed "all responsibility to establish a Medical Audit Committee to assure that quality health care was accessible to all inmates [and] implement all policies and procedures necessary for operation of the Clackamas County jail healthcare program . . . as required by the National Commission on Correctional Healthcare standards (NCCHC)." *Id.*

On May 19, 2021, Rhonda Burke was arrested and booked into Clackamas County Jail. *Id.* ¶ 22. Jessica Denker,[1] a registered nurse employed by NaphCare, identified Burke's mental health diagnoses as post-traumatic stress disorder ("PTSD"), schizoaffective disorder, and bipolar disorder. *Id.* ¶ 23. Denker noted that Burke had been hospitalized at Legacy Unity Center in 2019 for "psychiatric reasons" and Good Samaritan Hospital in 2013 for a suicide attempt and identified Burke as "a person requiring a mental health appointment." *Id.* ¶ 24. Denker noted Burke "does not recognize relapse triggers, is not committed to continuing care, and continued

---

[1] Denker is not a party to this action.

2 – OPINION & ORDER

substance use poses an imminent danger to self or others in the absence of 24-hour monitoring, unable to cope, for even limited periods of time outside of 24-hour care. She needs staff monitoring." *Id.* ¶ 25. On May 20, 2021, Defendant William Smith, a nurse practitioner employed by NaphCare, "performed a 'Statcare Intake Assessment' without review of the mental health screen or physical assessment." *Id.* ¶ 26. On May 20, 2021, student practical nurse Heather Sanduo[2] recommended that Burke continue to be followed while in segregation. *Id.* ¶ 27. The same day, Burke's toxicology results were positive for oxycodone, methamphetamine, and marijuana. *Id.* ¶ 28. Burke was released from Clackamas County Jail on May 20, 2021. *Id.* ¶ 29. On May 21, 2021, after Burke's release nurse Jessica Worden[3] "posted diagnoses: Alcohol abuse, Opioid Use Disorder, Moderate/Severe." *Id.* ¶ 30.

On May 25, 2021, at 11:15 pm, Burke was arrested and booked into Clackamas County Jail. *Id.* ¶ 31. Defendants Michael Meagher and Eric Nall, Clackamas County "Jail deputies," evaluated Burke at 11:30 pm and noted she was positive for mental health impairment, signs of being under the influence of alcohol and marijuana, abnormal/bizarre behavior, and delusional/paranoid behavior including fear that people wanted to kill her. *Id.* ¶ 33. Jail personnel observed that Burke was behaving "bizarre[ly], [was] under the influence, non-cooperative, confused, unable to follow simple commands, speaking gibberish, paranoid, and difficulty understanding [*sic*]. *Id.* Burke was not referred for further medical evaluations or placed on a 15-minute watch. *Id.* ¶ 34.

On May 26, 2021, at 1:56 am, Defendant Joseph Perius, a nurse employed by NaphCare, recorded that he was unable screen Burke due to behavioral issues, "per deputies." *Id.* ¶ 35.

---

[2] Sanduo is not a party to this action.
[3] Worden is not a party to this action.

3 – OPINION & ORDER

Burke was moved to an isolation cell. *Id.* ¶ 35. Perius recorded that Burke "continued to yell and cry hysterically" and to make "nonsensical statements." *Id.* ¶ 36. Burke needed help to get into the isolation cell because she "dropped with dead weight." *Id.* ¶ 37. Defendant Richard Sneath, a Clackamas County Jail deputy, noted that Burke was "upset." *Id.* ¶ 37. Burke hit the cell door and walls and became more agitated, which was noted as an "unusual booking event." *Id.* ¶ 38. At 8:36 pm on May 26, 2021, Perius noted Burke was "experiencing tremors and shakes, with a diagnosis including PTSD, schizoaffective disorder, bipolar, with recent use of illegal drugs or pain medications." *Id.* ¶ 39. Burke was administered with medications at 9:41 pm. *Id.* ¶ 40. At 9:47 pm, Defendant Sophia Barnes, a licensed practical nurse employed by Naphcare, noted that Burke was "experiencing significant withdrawal symptoms and could not be safely managed without medical/nursing monitoring and met criteria for 3.7WM level of care, *i.e.*, 24-hour nursing care." *Id.* ¶ 41. Barnes ordered neuro checks twice per day through June 1, 2021, because she believed Burke posed an imminent danger to herself without 24-hour monitoring and structured support. *Id.* ¶ 42.

On May 27, 2021, at 1:34 am, Burke "received a 'check the box' mental health screening by . . . Perius, who found . . . Burke to be alert, oriented, with appropriate effect [*sic*] and cooperative." *Id.* ¶ 45. Perius did not perform a suicide risk assessment. *Id.* ¶ 46. About an hour later, Burke's toxicology screen was positive for oxycodone, methamphetamine, marijuana, buprenorphine, and amphetamine. *Id.* ¶ 47. Twenty minutes later, Burke began a 120-hour isolation in detox housing. *Id.* ¶ 48. Burke did not receive her Librium medication at 3:16 am on May 27, 2021. *Id.* ¶ 49. At 9:53 am Burke submitted an inmate medical request form stating, "need mental health advisor" and "need help." *Id.* ¶ 50. At 4:04 pm Defendant Sherie Chaney, a

psychiatric nurse employed by NaphCare, assessed Burke as hostile and irritable but not needing mental health services. *Id.* ¶ 51.

On the morning of May 28, 2021, Defendant Andrea Scherzinger, a Clackamas County Jail deputy, responded to an alarm, and Burke told Scherzinger that she was in pain and was not getting help from medical. *Id.* ¶ 52. At 6:52 am, Scherzinger observed that Burke had not eaten breakfast, and Burke reiterated that she was in a lot of pain. *Id.* ¶ 53. At 8:39 am, Burke told Scherzinger that she was in too much pain to get up for breakfast. *Id.* ¶ 54. Scherzinger told Burke she would inform medical, and Burke called her liar and said she needed to go to the hospital. *Id.* At 8:50 am, Burke "was observed" by Denker and Defendant Jason Reed, a Clackamas County Jail deputy, "as an inmate detoxing from drugs/alcohol." *Id.* ¶ 55. Burke cried and stated she was in too much pain to stand or come out of her cell. *Id*. Burke declined Tylenol and ibuprofen because "it would cause pain to her injured kidney." *Id*. At 9:05 am, Scherzinger noted that Burke was yelling and banging on her cell door. *Id.* ¶ 56. Scherzinger tried talking to Burke to quiet her, but Burke continued yelling and banging on the door. *Id.* ¶ 57. At some point Scherzinger told Denker about "her encounters with . . . Burke," and Denker advised Scherzinger that Burke was on her detox list and she would check on Burke. *Id.* ¶ 58.

At 9:47 am on May 28, 2021, Burke was found unresponsive in her isolation cell, hanging from the top bunk with a sheet around her neck. *Id.* ¶ 59. Burke was transported to Kaiser Permanente and declared deceased at 1:35 pm. *Id.* ¶ 60. The cause of death was asphyxia due to ligature hanging. *Id.*

On May 16, 2023, Donald Crapser filed a Complaint in this Court as the personal representative of the Estate of Rhonda Burke, alleging claims against all NaphCare Defendants for deliberate indifference to serious medical needs in violation of the Fourteenth Amendment,

supervisory liability for violating the Fourteenth Amendment, and negligence and claims against NaphCare for gross negligence and pursuant to *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978), for violating the Fourteenth Amendment. NaphCare Defendants moved to dismiss all claims against them for failure to state a claim.

On October 24, 2023, the Court issued an Opinion and Order granting NaphCare Defendants' Motion, dismissing Plaintiff's claims against NaphCare Defendants, and granting leave to file an amended complaint to cure the deficiencies set out in the Opinion and Order.

On November 6, 2023, Plaintiff filed a First Amended Complaint ("FAC") asserting claims (1) against all NaphCare Defendants for deliberate indifference to Burke's serious medical needs in violation of the Fourteenth Amendment, (2) against Clackamas County pursuant to *Monell*, (3) against NaphCare for negligence, and (4) against NaphCare for gross negligence.

On November 29, 2023, Plaintiff's counsel moved to withdraw. On November 30, 2023, the Court granted Plaintiff's counsel's motion and advised Crapser that he may not represent Burke's Estate *pro se* and, therefore, must obtain counsel to proceed with this action.

On December 6, 2023, NaphCare Defendants filed a Motion to Dismiss the FAC.[4] Crapser did not file a response to the Motion to Dismiss and the Court took the matter under advisement on January 3, 2024.

## STANDARDS

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the claims. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). When evaluating the

---

[4] NaphCare Defendants served a copy of their Motion on Crapser via email and first class mail with return receipt.

sufficiency of a complaint's factual allegations, the court must accept all material facts alleged in the complaint as true and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012). A motion to dismiss under Rule 12(b)(6) will be granted if a plaintiff alleges the "grounds" of his or her "entitlement to relief" with nothing "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)[.]" *Id.* (citations and footnote omitted).

To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In other words, a complaint must state a plausible claim for relief and contain "well-pleaded facts" that "permit the court to infer more than the mere possibility of misconduct[.]" *Id.* at 679.

## DISCUSSION

### I.  Incorporation of Documents by Reference

NaphCare Defendants attach to the Declaration of Adrianna Simonelli guidance related to COVID precautions published by the Clackamas County Sheriff's Office, Burke's Clackamas County Jail medical records, the National Institutes of Health Clinical Opiate Withdrawal Scale (2015), and the American Academy of Family Physicians publication on Alcohol Withdrawal Syndrome. Simonelli Decl. ¶¶ 3-6, Exs. 1-4, ECF 43. NaphCare Defendants refer to these

7 – OPINION & ORDER

documents in their Motion to Dismiss, but do not ask the Court to incorporate them into the record by reference  "Generally, district courts may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Khoja v. Orexigen Therapeutics, Inc*., 899 F.3d 988, 998 (9th Cir. 2018). A court, however, "may consider evidence on which the complaint 'necessarily relies' if (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez,* 450 F.3d 445, 448 (9th Cir. 2006). In contrast, the "mere mention of the existence of a document is insufficient to incorporate the contents of a document." *Coto Settlement v. Eisenberg,* 593 F.3d 1031, 1038 (9th Cir. 2010). A document that "merely creates a defense to the well-pled allegations in the complaint" generally should not be incorporated by reference because it "did not necessarily form the basis of the complaint." *Khoja*, 899 F.3d at 1002.

In their Motion to Dismiss Plaintiff's Complaint, ECF 24, NaphCare Defendants asserted Burke's medical record should be incorporated by reference because the Complaint referred to it in support of Plaintiff's claims. Plaintiff did not contest the incorporation of the documents or the authenticity of the copies Defendants submitted, but appeared to challenge the accuracy of some of the medical records. Pl. Resp. 3, ECF 27. The Court concluded that incorporation of the medical records was appropriate, but because Plaintiff disputed the accuracy of some records, the Court did not assume the truth of the content of the records to the extent that the Complaint appeared to challenge their accuracy. Plaintiff continues to refer to Burke's medical record in the FAC. In addition, Plaintiff did not respond to Defendants' Motion to Dismiss the FAC and, therefore, did not contest the accuracy of Burke's medical record. The Court, therefore, incorporates Burke's medical record by reference and assumes the accuracy of the records.

8 – OPINION & ORDER

The Court incorporates by reference the National Institutes of Health Clinical Opiate Withdrawal Scale (2015) and the American Academy of Family Physicians publication on Alcohol Withdrawal Syndrome to the extent that they explain various tests or evaluations of Burke administered by NaphCare staff that are included in Burke's medical records.

The Court declines to incorporate by reference the COVID guidance document. Plaintiff does not refer to this document or challenge COVID requirements in the FAC.

## II.    Claim One

In the first claim Plaintiff incorporates by reference paragraphs 1 through 69 of the FAC and alleges "Individual Defendants and Defendant NaphCare were deliberately indifferent to Rhonda Burke's serious medical need in not adequately treating a person with Rhonda Burke's conditions in their custody." FAC ¶ 72. In the Court's October 24, 2023, Opinion and Order the Court advised Plaintiff that the Complaint did not comply with Federal Rule of Civil Procedure 8(a)(2) because it failed to clarify which acts or omissions committed by which Defendants gave rise to Plaintiff's claims. The Court noted that although incorporating all allegations preceding a claim by reference is not, on its own, a violation of Rule 8(a)(2), when a plaintiff fails to clarify which factual allegations are relevant to the particular claim or against which defendants the claim is alleged, the complaint does not comply with Rule 8(a)(2). Plaintiff again fails to clarify in the FAC which factual allegations are relevant to his first claim. Accordingly, Plaintiff's first claim still does not comport with Rule 8(a)(2).

In addition, as the Court noted in its October 24, 2023, Opinion and Order, "claims for violations of the right to adequate medical care brought by pretrial detainees against individual defendants under the Fourteenth Amendment must be evaluated under an objective deliberate

indifference standard." *Gordon v. County of Orange*, 888 F.3d 1118, 1124-25 (9th Cir. 2018) (internal quotations omitted). The plaintiff must establish four elements:

> (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

*Id.* at 1125. The Court concluded that Plaintiff failed to allege facts sufficient to establish that NaphCare Defendants should have been aware that Burke posed a suicide risk. After a review of the medical record and the Complaint, the Court stated, "Plaintiff alleges many acts or omissions that are too vague to state a claim," and set out various examples. The Court directed Plaintiff to "specify the acts and omissions attributed to each individual Defendant and how they caused the harm and plead facts showing that Defendants should have known that Burke faced a substantial risk of suicide." O&O at 16. In the FAC Plaintiff continues to incorporate all facts alleged in the 69 paragraphs proceeding the first claim without distinguishing which factual allegations are relevant to the particular claim and relevant to which Defendant. Plaintiff also fails to specify sufficiently the acts and omissions attributed to each individual Defendant and how they caused the harm or to plead facts showing that Defendants should have known that Burke faced a substantial risk of suicide.

The Court, therefore, grants NaphCare Defendants' Motion to Dismiss Plaintiff's first claim without leave to amend.

**II.    Claim Three**

Plaintiff's third claim incorporates all previous paragraphs of the FAC, 1 through 80. Plaintiff alleges "because Defendant Clackamas County and NaphCare provided inadequate

medical care to persons with mental illness and suicidal ideation, it was foreseeable that these unreasonable practices would end in Rhonda Burke's death." FAC ¶ 83.

NaphCare Defendants move to dismiss this claim on the basis that Plaintiff again fails to allege facts sufficient to establish that their conduct created a foreseeable risk of harm to Burke.

Under Oregon law,

> "unless the parties invoke a status, a relationship, or a particular standard of conduct that creates, defines, or limits the defendant's duty, the issue of liability for harm actually resulting from defendant's conduct properly depends on whether that conduct unreasonably created a foreseeable risk to a protected interest of the kind of harm that befell the plaintiff."

*Rhodes v. U.S. W. Coast Taekwondo Ass'n, Inc.*, 273 Or. App. 670, 678 (2015) (quoting *Fazzolari By & Through Fazzolari v. Portland Sch. Dist. No. 1J*, 303 Or. 1, 17 (1987)). NaphCare Defendants correctly point out that in the FAC Plaintiff fails to allege NaphCare Defendants had a special relationship with Burke, however, Oregon courts have held that physician-patient is the kind of special relationship referred to in *Rhodes*. *See, e.g.*, *Appleyard v. Port of Portland,* 311 Or. App. 498, 512 (2021)(noting claims involving negligence in the doctor-patient context "fall under a special category of negligence claims involving a 'special relationship between the plaintiff and the defendant.'"); *Stang v. United States*, No. 3:15-CV-02318-YY, 2018 WL 1702959, at *8 (D. Or. Jan. 31, 2018), report and recommendation adopted, No. 3:15-CV-02318-YY, 2018 WL 1702047, *8 (D. Or. Apr. 6, 2018)(finding a physician-patient relationship existed between an inmate and medical staff at Sheridan FCI giving rise to a special relationship in the negligence context). In these types of cases "a different standard applies: Professional negligence is 'the failure to meet the standard of care used in the reasonable practice of the profession in the community.'" *Id.* at 506 (quoting *Delaney v. Clifton,* 180 Or. App. 119, 123 (2002)). "The plaintiff must plead . . . '(1) a duty that runs from the

11 – OPINION & ORDER

defendant to the plaintiff; (2) a breach of that duty; (3) a resulting harm to the plaintiff measurable in damages; and (4) a causal link between the breach and the harm.'" *Id.* (quoting *Moser v. Mark*, 223 Or. App. 52, 55–56 (2008)). *See also Son v. Ashland Comm'y Healthcare Servs.*, 239 Or. App. 495, 506 (2010)(citation omitted)(same). "When a physician-patient relationship exists, the doctor has a duty to exercise 'that degree of care, knowledge and skill ordinarily possessed and exercised by the average provider of that type of medical service.'" *Id.* (quoting *Curtis v. MRI Imaging Services II*, 327 Or. 9, 14 (1998)).

Plaintiff fails to allege with any degree of specificity the standards of care that NaphCare Defendants breached or a causal relationship between the breach and Burke's suicide. For example, Plaintiff alleges the National Commission on Correctional Healthcare standards ("NCCHC") required NaphCare to establish a medical audit committee; "implement all policies and procedures necessary for operation of the Clackamas County jail healthcare program"; and provide a "medical detoxification program for drug and/or alcohol addicted inmates and detainees[,] . . . intermittent monitoring of all detoxification cells located in the jail" that included "documentation of vital signs and a determination of levels of consciousness every two hours for severe cases"; "recruit, interview, hire, train and supervise all healthcare staff"; and "implement a Quality Assurance Program, and maintain staffing levels set forth by the contract." FAC ¶ 21. Plaintiff does not allege any facts related to establishment of a medical audit committee, implementation of a quality assurance program, staffing levels, or the presence of a detoxification program.

Plaintiff alleges the NCCHC states "high-risk periods include immediately upon admission [and] inmates newly admitted to segregation or in single cell housing." FAC ¶ 66. Plaintiff points out that the NCCHC recommends that "[a] treatment plan should be developed or

revised for any inmate expressing suicidal ideation." FAC ¶ 67. As noted, however, Plaintiff did not express suicidal ideation and, in fact, when Perius administered the Columbia Suicide Severity Risk Scale, Burke answered "no" to each question. Simonelli Decl., ECF 53, Ex. 2 at 85. When Burke stated she had been using both alcohol and opiates she was assigned to "detox housing." *Id.* at 102, 111. Between May 26, 2021, at 8:39 p.m. and May 28, 2021, at 3:49 a.m. NaphCare staff administered the Clinical Opiate Withdrawal Scale ("COWS") five times and the Clinical Withdrawal Assessment for Alcohol Scale Revised ("CIWA") five times. Each time Burke's scores indicated only mild withdrawal. As in Plaintiff's initial Complaint, Plaintiff alleges several facts about Burke's actions, but fails to allege facts sufficient to allege NaphCare Defendants failed to comply with the standards of care or that there is a causal connection between NaphCare Defendants' actions and Burke's suicide. The Court, therefore, grants NaphCare Defendants' Motion to Dismiss Plaintiff's negligence claim without leave to amend.

### III. Claim Four

In the fourth claim Plaintiff incorporates all prior allegations in the FAC and asserts "Defendant NaphCare by and through its employees Michael Meagher and Eric Nall . . . was grossly negligent and acted with reckless misconduct in one or more . . . ways." FAC ¶ 91.[5] Plaintiff alleges NaphCare was grossly negligent in the following ways:

> a. In failing to provide an appropriate medical examination, mental health assessment and referral for further mental health evaluation, and treatment . . . on May 25, 2021, as required by Rhonda Burke's response to prior hospitalizations for mental health problems and Clackamas County Inmate Summary classifying Rhonda Burke as mentally impaired;
>
> b. In failing to obtain and provide appropriate medical examination, mental health assessment and referral for further mental health evaluation by Joseph Perius on May 26, 2021, [when Burke was] observed to be

---

[5] Meager and Nall are Clackamas County employees, not employees of NaphCare. Actions taken by these Defendants, therefore, cannot support a claim as to NaphCare.

13 – OPINION & ORDER

      making nonsensical statements, crying, hysterical, agitated, and patient identified as speaking gibberish, with bizarre behavior 2 ½ hours prior by jail personnel;

      c. In failing to obtain and provide additional medical care or transfer to a hospital when Defendant Perius determined he was unable to perform a mental health screening;

      d. In failing to obtain and provide additional medical care or transfer to a hospital when Defendant Perius determined Rhonda Burke's mental health diagnosis included: PTSD schizoaffective disorder, and bipolar disorder;

      e. In failing to evaluate and document if Rhonda Burke was experiencing hallucinations, delusional, nonsensical, paranoid, altered mental status or inappropriate contact as part of the receiving screening;

      f. In failing, on May 26, 2021, to further evaluate and obtain and provide additional medical care or transfer to a hospital when Defendant Sophia Barnes recognized Rhonda Burke required 24-hour nursing care, *i.e.,* meets the criteria for a 3.7wm level of care;

      g. In failing to assess Rhonda Burke for suicide risk by Defendant Perius on May 27, 2021;

      h. In failing to assess Rhonda Burke for suicide risk by Defendant Sherie Chaney following Rhonda Burke's request for "mental health advisor" and "needs help", five hours previous.

FAC ¶ 91.

      Oregon recognizes "independent claims for 'simple negligence' and 'gross negligence,' with the latter being 'characterized by a state of mind which indicates conscious indifference to the rights of others or to the probable consequences of one's acts.'" *Wani v. Croy*, No. 3:17-CV-01192-YY, 2017 WL 7360373, at *2 (D. Or. Dec. 13, 2017), report and recommendation adopted, No. 3:17-CV-01192-YY, 2018 WL 700794 (D. Or. Feb. 2, 2018)(quoting *Simpson v. Phone Directories Co.*, 82 Or. App. 582, 585 (1986); and citing *WSB Investments, LLC. v. Pronghorn Dev. Co., LLC*, 269 Or. App. 342, 360 (2015)("'Gross negligence' generally means negligence characterized by near total disregard or indifference to the rights of others or the

probable consequences of a course of conduct."). *See also* Howard v. Chimps, Inc., 251 Or. App. 636, 647 (2012)(To state a claim for gross negligence a plaintiff must allege facts that support a finding that the defendant "acted with reckless disregard of safety or indifference to the probable consequences of its acts" and that "that defendant's reckless or indifferent acts caused her injuries.").

Plaintiff's allegations fail to state a claim for gross negligence because they do not allege specific standards of care breached by NaphCare Defendants or a causal connection between NaphCare Defendants' alleged actions and Burke's death. For example, with respect to the alleged failure to refer Burke for further mental health evaluation due to her statement that she had been hospitalized in 2013 for a suicide attempt and in 2019 for unspecified psychiatric reasons, Oregon courts have indicated that events that are few and remote in time from the alleged injury do not support a finding of gross negligence. *See, e.g.*, Howard, 251 Or. App. at 649 (finding a history of six chimpanzee attacks over 14 years, three of which occurred remote in time to the attack at issue did not support a finding of gross negligence). Burke was hospitalized for a suicide attempt in 2013, which was eight years before the events in this case.

When Burke was arrested at 11:15 p.m. on May 25, 2021, Clackamas County employees evaluated Burke and noted she was positive for mental health impairment and exhibited signs of being under the influence of alcohol and marijuana, abnormal/bizarre behavior, and delusional/paranoid behavior including fear that people wanted to kill her. Clackamas County Jail personnel observed that Burke was behaving "bizarre[ly], [was] under the influence, non-cooperative, confused, unable to follow simple commands, speaking gibberish, paranoid, and difficulty understanding [*sic*]." FAC ¶ 34. Although Plaintiff alleges Burke was not referred for further medical evaluations or placed on a 15-minute watch, it is unclear that any NaphCare staff

15 – OPINION & ORDER

were involved in that decision. In fact, Plaintiff specifically alleges Perius was unable to screen Burke due to behavioral issues "per deputies." *Id.* ¶ 35. In addition, Burke was evaluated several times for suicide risk and each time she answered "no" to questions on the evaluation. Burke was experiencing symptoms of withdrawal, but was placed in "detox housing," provided with medication for detoxification, and monitored. Although Perius could not conduct a mental health screening at 1:56 a.m. on May 26, 2021, he was able to conduct a screening by 8:36 a.m. and Burke was administered with medications. Perius also conducted a mental health screening of Burke on May 27, 2021, at which time she was noted to be alert, oriented, and to have an appropriate affect. Although various Clackamas County employees interacted with Burke beginning at 6:52 a.m. on May 28, 2021, regarding Burke's statement that she was in too much pain to eat breakfast, they did not inform any NaphCare employee of Burke's issues until after 9:05 a.m. NaphCare staff indicated they would check on Burke, but she was found nonresponsive in her cell soon after.

The FAC fails to allege facts that reflect a near total disregard or indifference by NaphCare employees to the rights of Burke or to the probable consequences of a course of conduct. The Court, therefore, dismisses Plaintiff's fourth claim for gross negligence without leave to amend.

## CONCLUSION

The Court GRANTS Defendants' Motion to Dismiss First Amended Complaint, ECF 42, and accordingly, dismisses Plaintiff's claims against Defendants NaphCare, Smith, Perius,

Barnes, and Chaney without leave to amend.

    IT IS SO ORDERED.

    DATED:_February 6, 2024_.

                                              MARCO A. HERNÁNDEZ
                                              United States District Judge